UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CAROLYN WHITLEY                                          CIVIL ACTION

VERSUS                                                   NO.  15-595-BAJ-RLB

PINNACLE ENTERTAINMENT, INC.
OF DELAWARE, ET AL.


## ORDER

Before the Court is a Motion to Compel Production of Documents (R. Doc. 30) filed by

Defendants PNK (Baton Rouge) Partnership d/b/a L'Auberge Casino & Hotel and Pinnacle

Entertainment, Inc. of Delaware (collectively, "PNK") on July 14, 2016.  PNK seeks an order

compelling Plaintiff to produce documents evidencing payments made by a third-party, Bayou

Medical Management – Preferred Provider Organization, LLC ("BMM"), to Plaintiff's

healthcare providers.  Plaintiff has filed an Opposition. (R. Doc. 37).  PNK has filed a Reply. (R.

Doc. 49).

Also before the Court is PNK's Motion for Limited Extension of Discovery Deadline (R.

Doc. 34) filed on July 15, 2016.  The Motion seeks an extension of the discovery deadline for the

sole purpose of serving a third-party subpoena on BMM to obtain documents evidencing

payments made by BMM to Plaintiff's healthcare providers, as well as contracts between BMM

and Plaintiff's healthcare providers.  Plaintiff has filed an Opposition. (R. Doc. 48).

Also before the Court is PNK's Motion to Compel Production of Subpoenaed Documents

(R. Doc. 32) filed on July 15, 2016.  The Motion seeks an order compelling the production of

documents from Plaintiff's healthcare provider, Orthopaedic Care Center of Louisiana

("Orthopaedic Care"), pursuant to a Rule 45 subpoena.  Orthopaedic Care has filed an

Opposition. (R. Doc. 52).

      Oral argument was held on PNK's Motion to Compel Production of Documents (R. Doc.

30) and PNK's Motion for Limited Extension of Discovery Deadline (R. Doc. 34) on September

21, 2016. (R. Doc. 60).  While PNK's Motion to Compel Production of Subpoenaed Documents

(R. Doc. 32) was not set for oral argument, counsel for Orthopaedic Care made an appearance to

discuss that pending motion.

## I.      Background

      In her Amended Complaint, Carolyn Whitley ("Plaintiff") alleges that while she was

sitting playing the slot machine at a casino owned and operated by PNK, the gas cylinder

supporting her chair failed, causing the chair to violently drop and Plaintiff to suffer injuries. (R.

Doc. 15 at 3).  In addition to PNK, Plaintiff named as a defendant Gasser Chair Co., Inc.

("Gasser"), the manufacturer and distributor of the chair.  (R. Doc. 15 at 2).  Gasser filed a third-

party complaint against Hunt Components, LTD. and Federal Insurance Company ("Hunt"), the

alleged component manufacturer of the gas cylinder and its insurer. (R. Doc. 22).

      On May 20, 2016, PNK attempted service of a subpoena on BMM seeking certified

copies of "any and all contracts" between BMM and Plaintiff's healthcare providers and "any

documents evidencing payments" made by BMM for Plaintiff's medical treatment. (R. Doc. 34-

2).  PNK describes BMM as "a company that negotiates discounted rates for an attorney's

clients, and pays the client's medical expenses prior to the settlement of the case." (R. Doc. 30-1

at 2).  PNK asserts that through this arrangement, "medical providers charge plaintiff their usual

and customary charges, but BMM pays the medical providers at a previously negotiated

discounted rate." (R. Doc. 30-1 at 2).  BMM informed PNK that service of the subpoena was improper. (R. Doc. 34-3).

On May 20, 2016, PNK served a subpoena on Orthopeadic Care seeking certified copies of "all contracts" between Orthopeadic Care and BMM and "any documents evidencing any payments" made by BMM to Orthopeadic Care for Plaintiff's medical treatment. (R. Doc. 32-3). Orthopeadic Care refused to produce any documents on the basis that it "is not the proper party to produce such documents and does not believe it is a part of this case." (R. Doc. 32-4).

On June 15, 2016, PNK propounded its Third Request for Production on Plaintiff, requesting production of "all evidence of actual payments to any healthcare provider" by BMM. (R. Doc. 30-3).  Plaintiff responded that she did not have any responsive documents in her possession. (R. Doc. 30-4).  The parties held a Rule 37(a)(1) conference on July 6, 2016. (R. Doc. 30-1 at 3; R. Doc. 37 at 2).

In support of its motion to compel directed at Plaintiff, PNK argues that the documents sought are relevant "to determine the proper amount of plaintiff's damages as BMM paid for plaintiff's medical expenses at discounted rates and amounts unknown to PNK" and are not subject to the collateral source rule. (R. Doc. 30-1 at 4).  PNK further argues that the documents sought are in Plaintiff's "control" for the purposes of Rule 34(a)(1) because Plaintiff has the legal right and practical ability to obtain the documents requested. (R. Doc. 30-1 at 6-10).  In response, Plaintiff argues that she is not in "control" of the documents requested, and further represents that she has produced to PNK "copies of the invoices and supporting bills" that she is obligated to pay BMM in light of the arrangement between Plaintiff and BMM. (R. Doc. 37 at 3-5).

In support of its motion for a limited extension of the discovery deadline, PNK argues that such an extension is needed to re-serve a subpoena for documents on BMM.  (R. Doc. 34-1). Plaintiff opposes an order granting only a limited extension of the non-expert discovery deadline for the foregoing purpose, arguing that good cause exists for an extension of all discovery deadlines through the filing of dispositive motions and Daubert motions. (R. Doc. 48 at 1).

In support of its motion to compel directed at Orthopeadic Care, PNK again argues that the documents sought are relevant "to determine the proper amount of plaintiff's damages as BMM paid for plaintiff's medical expenses at discounted rates and amounts unknown to PNK." (R. Doc. 32-1 at 4).  Orthopeadic Care represents that in light of Plaintiff's medical authorization form, it "has produced the bills and records showing what BMM has paid" and that it has "no contracts with BMM specific to the treatment" of Plaintiff. (R. Doc. 52 at 2).  Finally, Orthopaedic Care argues the information sought by PNK is irrelevant in light of the collateral source rule.  (R. Doc. 52 at 2-6).

## II.    Law and Analysis

### A.    Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  The court must limit the frequency or extent of discovery if it determines that: "(i) the

discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rule 34 provides for the discovery of documents and tangible items.  A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a)(1).  The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

Rule 45 governs discovery from non-parties through the issuance of subpoenas.  Rule 45 subpoenas are subject to the same discovery limitations outlined in Rule 26(b). *See Hussey v. State Farm Lloyds Ins. Co.,* 216 F.R.D. 591, 596 (E.D. Tex. 2003).  The party issuing the subpoena "must take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

**B.     Analysis**

PNK seeks production from both Plaintiff and BMM all documents evidencing payments by BMM to any healthcare provider with regard to Plaintiff.[1]  Plaintiff represents that she has produced all invoices reflecting her own payments to BMM.  The question is, therefore, whether the payments by BMM to Plaintiff's healthcare providers is discoverable under Rule 26(b)(1).

PNK argues that the discovery sought implicates the collateral source rule.[2]  "As adopted by the Louisiana Supreme Court, the collateral source rule is a rule of evidence and damages." *Kadlec Med. Ctr. v. Lakeview Anesthesia Associates*, 527 F.3d 412, 425 (5th Cir. 2008).  "The rule provides that payments made to or benefits conferred upon an injured party from sources other than the tortfeasor, notwithstanding that such payments or benefits cover all or a part of the harm for which the tortfeasor is liable, are not credited against the tortfeasor's liability." *Id*. (citing *Bozeman v. State*, 879 So.2d 692, 697 (La. 2004)).  Concerned with the potential for a "windfall" or "double-dipping" by the plaintiff, the Louisiana Supreme Court has held that the collateral source rule may only apply where "the injured party's patrimony was diminished to the extent that he was forced to recover against outside sources and the diminution of patrimony was *additional* damage suffered by him." *Bozeman*, 879 So.2d at 699 (collateral source rule does not apply to Medicaid write-offs because no consideration was provided for that benefit).  The Louisiana Supreme Court has recently applied this line of reasoning in holding that the collateral source rule does not apply to attorney-negotiated write-offs or discounts of medical expenses

---

[1] PNK actually makes the overly broad request of Plaintiff to produce <u>all</u> evidence of actual payments to any healthcare provider by BMM without any explicit limitations to Plaintiff's medical treatment.

[2] PNK has filed a separate motion in limine seeking to exclude evidence of the total amount billed by medical providers for Plaintiff's medical expenses before adjustments, write-offs, or discounts provided to BMM, arguing that the collateral source rule does not apply to such discounts. (R. Doc. 27).  Plaintiff opposes the motion. (R. Doc. 42).  The motion remains pending before the district judge.

6

obtained through the litigation process. *See Hoffman v. 21st Century North American Insurance Company*, No. 2014-2279, 2015 WL 5776131, -- So.3d -- (La. Oct. 2, 2015).

Here, PNK has not provided any evidence in the record that Plaintiff stands to benefit from the difference between the amount she is obligated to pay BMM and the amount that BMM is obligated to pay Plaintiff's healthcare providers.  The record merely indicates that Plaintiff has paid the usual and customary rates for services provided by certain healthcare providers; that BMM has arranged for those services; and that BMM's profit margin is determined by the difference between the amount BMM receives from Plaintiff and the amount it pays to Plaintiff's healthcare providers.  There is no indication in the record that the charges by BMM to Plaintiff are grossly inflated or exaggerated relative to the discounted amount paid by BMM to Plaintiff's healthcare providers.  As put by a Louisiana appellate court, this arrangement "is no different than paying premiums for health or accident insurance." *Green v. Hollywood Trucks, LLC, Et Al.*, No. 2015-C-0765 (La. 4th Cir. July 24, 2015) (reversing trial court because the realtor-plaintiff was "entitled to present the full amount of medical expenses incurred, including the 'write-off' amounts"); *see also Howard v. Offshore Lifeboats, LLC*, No. 13-4811, 2016 WL 232252 (E.D. La. Jan. 19, 2016) (requiring defendant to pay "cure" under the Jones Act in the amount invoiced to the plaintiff by a third party medical financing company, not the reduced amount paid by the third party medical financing company to the plaintiff's medical providers) (citing *Kelly v. Bayou Fleet, Inc.*, No. 05-6871, 2009 WL 1668490, at *6 (E.D. La. June 12, 2009)).

Based on the foregoing, the Court need not determine whether Plaintiff has "control" of BMM's payments to her healthcare providers pursuant to Rule 34(a)(1).  PNK has not established that such information is within the scope of discovery.  Accordingly, the Court will

deny PNK's motion to compel Plaintiff to respond further to PNK's Third Request for Production.  Similarly, the Court will not grant PNK leave to serve a third-party subpoena on BMM seeking information about payments made by BMM to Plaintiff's healthcare providers.

The Court does, however, find good cause to provide PNK the opportunity to serve a third-party subpoena on BMM seeking any portions of any contracts or agreements between BMM and Plaintiff's healthcare providers, or between Plaintiff and Plaintiff's healthcare providers, indicating any responsibility of Plaintiff for payments directly to those healthcare providers or indicating whether the healthcare providers have any right to recover from Plaintiff any amounts in addition to or in lieu of Plaintiff's payments to BMM or BMM's payment to the healthcare providers.  Such information may lead to the discovery of admissible evidence regarding the total amount of medical damages Plaintiff is entitled to recover in this action.  Similarly, the Court will require Orthopeadic Care to provide any portions of any contracts or agreements between BMM and Orthopeadic Care, or between Plaintiff and Orthopeadic Care, indicating any responsibility of Plaintiff for payments directly to Orthopeadic Care or indicating whether Orthopeadic Care has any right to recover from Plaintiff any amounts in addition to or in lieu of Plaintiff's payments to BMM or BMM's payment to Orthopeadic Care.

The Court need not decide at this time, however, whether and to what extent there is good cause to extend any additional pre-trial deadlines as Plaintiff suggests, including the non-expert discovery deadline.  The Court will address additional extensions of the pre-trial deadlines by separate order.[3]

---

[3] On August 29, 2016, Hunt moved for an extension of all pre-trial deadlines through the filing of dispositive motions. (R. Doc. 56).  The Court granted the motion, stating that it would consider any appropriate modifications to the current scheduling order deadlines in light of the unresolved discovery disputes and delay due to the recent historic flood in the area after the Court held oral argument on the instant motion. (R. Doc. 57).  The Court has not, however, issued any new discovery deadlines in this action.  The Court has, however, provided the parties with a schedule for completing inspection and/or

III.     **Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that PNK's Motion to Compel Production of Documents (R. Doc. 30) is **DENIED**.

**IT IS FURTHER ORDERED** that PNK's Motion for Limited Extension of Discovery Deadline (R. Doc. 34) is **GRANTED IN PART and DENIED IN PART**.  Pursuant to Rule 16(b)(4), the non-expert discovery deadline is extended under this Order to **October 28, 2016**, for the sole purpose of providing PNK time to serve a third-party subpoena on BMM.  Any such subpoena shall be limited to seeking any portions of any contracts or agreements between BMM and Plaintiff's healthcare providers, or between Plaintiff and Plaintiff's healthcare providers, indicating any responsibility of Plaintiff for payments directly to those healthcare providers or indicating whether the healthcare providers have any right to recover from Plaintiff any amounts in addition to or in lieu of Plaintiff's payments to BMM or BMM's payment to the healthcare providers.

**IT IS FURTHER ORDERED** that PNK's Motion to Compel Production of Subpoenaed Documents (R. Doc. 32) is **GRANTED IN PART and DENIED IN PART**.  Within **14 days** of the date of this Order, Orthopaedic Care shall produce to PNK, if they exist, any portions of any contracts or agreements between BMM and Orthopeadic Care, or between Plaintiff and Orthopeadic Care, indicating any responsibility of Plaintiff for payments directly to Orthopeadic Care or indicating whether Orthopeadic Care has any right to recover from Plaintiff any amounts in addition to or in lieu of Plaintiff's payments to BMM or BMM's payment to Orthopeadic Care.

---

testing of the chair at issue, and has set a telephone status conference for October 26, 2016 to discuss the status of the case and the entry of revised deadlines. (R. Doc. 61).

**IT IS FURTHER ORDERED** that the parties shall bear their own costs with respect to the foregoing motions.

Signed in Baton Rouge, Louisiana, on October 7, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**